IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**PHILLIP G. CLINE,**

       **Plaintiff,**

vs.

CIVIL ACTION
No. 03-2655-GTV

**SOUTHERN STAR CENTRAL
GAS PIPELINE, INC., formerly
WILLIAMS GAS PIPELINES
SOUTHCENTRAL, INC.,**

       **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Phillip G. Cline filed this action pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332, against Defendant Southern Star Central Gas Pipeline, Inc. ("Southern Star"), formerly Williams Gas Pipelines Southcentral, Inc. ("Williams Gas"). Plaintiff's claims related to his efforts over the past twenty-six years to obtain free gas from Defendant and its predecessors pursuant to a gas storage lease and an acknowledgment of payment agreement. Defendant asserted two counterclaims for a declaratory judgment and a judgment quieting title. On February 18, 2005, the court granted in part and denied in part Defendant's motion for summary judgment (Doc. 46).[1] Specifically, the court granted Defendant summary judgment as to all of Plaintiff's claims

---

[1] The facts of this case are set forth in that order, and those readers interested in them should refer to that order. See Cline v. S. Star Cent. Gas Pipeline, Inc., 356 F. Supp. 2d 1203 (D. Kan. 2005).

and Defendant's declaratory judgment counterclaim, but denied summary judgment as to Defendant's quiet title counterclaim. This case is now before the court on Plaintiff's and Defendant's motions to alter or amend judgment (Docs. 62, 64) pursuant to Fed. R. Civ. P. 59(e). For the following reasons, the court denies Plaintiff's motion and grants Defendant's motion.[2]

## I. Standard of Review

Both parties have moved to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). Defendant, however, seeks relief from the court's denial of summary judgment as to its quiet title counterclaim. Because the particular order from which Defendant seeks relief is interlocutory, the appropriate form of relief is reconsideration of that order. Nevertheless, the grounds justifying an alteration, amendment, or reconsideration are essentially the same: (1) a change in law; (2) new evidence; and/or (3) the necessity of correcting clear error or preventing manifest injustice. Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 948 (10th Cir. 1995); Priddy v. Massanari, No. 99-4195-DES, 2001 WL 1155268, at *2 (D. Kan. Sept. 28, 2001). "Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination." Sithon Maritime Co. v. Holiday Mansion, 177 F.R.D. 504, 505 (D. Kan. 1998) (citations omitted). But a litigant should not use such a motion to rehash previously rejected arguments or to offer new legal theories or facts. Achey v. Linn County Bank, 174 F.R.D. 489, 490 (D. Kan. 1997). "A party's failure to present its strongest case in the first

---

[2] The court observes that neither party filed a response to its opponent's motion.

2

instance does not entitle it to a second chance in the form of a motion to reconsider." Sithon Maritime Co., 177 F.R.D. at 505 (citation omitted).

## II. Discussion[3]

### A. Plaintiff's Rule 59(e) Motion

#### 1. Statute of Limitations

The court's February 18 order concluded that all of Plaintiff's claims were barred by the applicable statute of limitations. Plaintiff now argues that his claims for damages under the Acknowledgment of Payment are timely. The court, however, will not reconsider its prior ruling on the application of the statute of limitations to Plaintiff's claims. At summary judgment, Plaintiff relied on a continuing contract theory to maintain "that breach of contract actions accrue when the payments due under the contract become due." Under this theory, Plaintiff asserted that a new cause of action accrued every time he requested free gas under the Acknowledgment of Payment. The court rejected this argument, concluding that it "render[ed] the five-year statute of limitations period meaningless." Cline, 356 F. Supp. 2d at 1213. In his Rule 59(e) motion, Plaintiff argues that breach of the Acknowledgment of Payment "accrues when the performance on each new written request for free gas was due." Because this is essentially an attempt to "dress up [an] argument[] that previously failed," Jones v. Wildgen, 349 F. Supp. 2d 1358, 1361 (D. Kan 2004) (citation omitted), the court declines to revisit the issue.

---

[3] The court assures the parties that it has considered all of their arguments, even if some arguments are not discussed in this Memorandum and Order.

2. Defendant's Connection Fee

Plaintiff next argues that the court committed manifest error in concluding that the $5,000 connection/tap fee requested by Defendant is supported by the terms of the Acknowledgment of Payment. Specifically, Plaintiff asserts that the $5,000 connection/tap fee is an unforeseeable cost and is not included in his responsibility under the Acknowledgment of Payment to "lay and maintain in good condition the necessary service lines and appurtenances to receive and utilize the gas delivered, all at . . . [his] sole cost, risk and expense. . . ." In sum, while Plaintiff concedes that he must pay the costs to lay the pipe to Defendant's pipeline, Plaintiff disputes whether Defendant may charge him the connection/tap fee without express language requiring Plaintiff to pay such an expense.

In regard to Plaintiff's argument, the court's February 18 order stated:

The terms of the Acknowledgment are not ambiguous. . . .  As a condition precedent to receiving free gas, Plaintiff must bear, on his own, all the costs and expenses of installing the service line and any appurtenances in order to make a connection to Defendant's pipeline.  Defendant's requirements are reasonable and consistent with the plain terms of the Acknowledgment and the intent of the original parties.  While the Acknowledgment does not specify the amount of these costs and expenses, the court concludes that Defendant is entitled to the actual costs from Plaintiff for constructing the service line, metering facilities, and connection tap.  The court also concludes that filling out Defendant's standard application form and paying its connection charge fee are part of the costs and expenses the lessor assumed under the Acknowledgment.

Cline, 356 F. Supp. 2d at 1217-18. After considering Plaintiff's arguments, the court will not disturb its prior ruling. It is Plaintiff's responsibility to connect to Defendant's pipeline, including the costs of installing the service line and other necessary equipment to make a proper connection.

4

3. Forfeiture

Lastly, Plaintiff maintains that the court erred by failing to address his argument that Defendant forfeited the Gas Storage Lease pursuant to K.S.A. § 55-201 et seq. Specifically, Plaintiff states that on April 16, 2003, his attorney provided Williams Gas notice that the Gas Storage Lease was terminated, and thus, Plaintiff contends that Defendant received notice as required by K.S.A. § 55-206. Plaintiff correctly points out that the court did not specifically mention Plaintiff's statutory forfeiture argument in its February 18 order. The court, however, did reject Plaintiff's position that the April 16, 2003 letter to Williams Gas had the effect of unilaterally revoking the Gas Storage Lease. Cline, 356 F. Supp. 2d at 1222. In fact, the court's opinion concluded that both the Gas Storage Lease and the Oil and Gas Lease remained in good standing. Id. at 1221.

Plaintiff's forfeiture argument under K.S.A. § 55-201 et seq. is premised on the assumption that the requirements Defendant communicated to Plaintiff in order to receive his free gas were unlawful. The court, however, held in its February 18 order that Defendant's requirements did not violate the free gas provision of the Acknowledgment of Payment. Id. at 1217-18. The forfeiture statutes cited by Plaintiff therefore do not apply. See Christiansen v. Va. Drilling Co., Inc., 226 P.2d 263, 267 (Kan. 1957) ("It is apparent that before the proceedings may be used under the statute, the lease must have become forfeited by a breach of its expressed terms."); Tamsk v. Cont'l Oil Co., 150 P.2d 326, 329-30 (Kan. 1944) ("These sections provide a procedure whereby a landowner may clear his title of the cloud on it caused by a lease that has been forfeited. In order for these sections to apply, however, it must appear that the lease has become forfeited.").

5

Accordingly, Plaintiff's Rule 59(e) motion is denied.

### B.  Defendant's Rule 59(e) Motion

The court's February 18 order denied Defendant's quiet title counterclaim.  Cline, 356 F. Supp. 2d at 1221.  First, the court noted that neither party provided the court with a legible copy of the Oil and Gas Lease.  Id.  Second, the court observed that neither party explained the significance of paragraph nine of the Gas Storage Lease concerning Plaintiff's royalty interests to any oil and gas developed in certain depths underneath his property.  Id.  Defendant requests the court to reconsider the denial of its counterclaim.  Because Defendant has now provided the court with a legible copy of the Oil and Gas Lease, the court determines that this new evidence justifies a reconsideration of the court's previous denial of Defendant's quiet title counterclaim.

Defendant's quiet title counterclaim stemmed from Plaintiff's conversion claim, as well as Plaintiff's alleged threats to enter another oil and gas lease so that an operator could begin producing oil and gas from Plaintiff's property.  For instance, a letter dated December 10, 2002, from Plaintiff's counsel to Williams Gas states: "Pursuant to paragraph 9 of the [Gas Storage] Lease, Mr. Cline hereby notifies you of his intent to drill for oil production at any depth and possibly for gas production below your leasehold."  Paragraph nine of the Gas Storage Lease provides:

> [The lessor] reserves all oil rights below the surface and all gas rights pertaining to gas which may be found in formations lying below twenty feet (20') below the top of the Mississippi Lime but [the lessor] agrees that in the development of such reserved rights and minerals, either directly or by lease to others, . . . [the lessor] shall do all things necessary to adequately protect [the lessee's] storage formations,

6

and agrees to use such methods as may be deemed a necessity by [the lessee].

Recognizing the royalty interests granted to Plaintiff in paragraph nine of the Gas Storage Lease, it is Defendant's position that it has the exclusive right to explore and produce the oil, gas, and other minerals underneath Plaintiff's property pursuant to paragraph one of the Oil and Gas Lease.  That provision states, in relevant part:

> That lessor . . . does hereby grant, lease, and let exclusively unto the lessee the hereinafter described land, . . . for the purpose of carrying on geological, geophysical and other exploratory work, including core drilling, and the drilling, mining, and operating for, producing, and saving all of the oil, gas, casinghead gas, casinghead gasoline and all other gases and their respective constituent vapors, and for constructing roads, laying pipe lines, building tanks, storing oil, building powers, stations, telephone lines and other structures thereon necessary or convenient for the economical operation of said lands . . . .

The court concurs that the Oil and Gas Lease grants Defendant the exclusive right to produce oil, gas and other minerals underneath Plaintiff's property.  Furthermore, the court determines that paragraph nine of the Gas Storage Lease preserves Plaintiff's royalty interests in those formations outside the formations leased to Defendant for gas storage.  As Defendant points out, these provisions evidence an intent to protect Defendant's gas storage rights and its ownership of gas injected into the storage formations.  Based on the court's ruling in its February 18 order that the Gas Storage Lease and Oil and Gas Lease remain valid, the court holds that Defendant is entitled to an order quieting title

> to all natural gas injected into the Storage Zone by Southern Star, to any other natural gas, oil or other minerals under the Subject Property (other than a potential royalty interest in minerals that might be produced in the future by Southern Star, if any, from greater than twenty feet (20') below the top of the Mississippi Lime) and to any wells, pipelines or other property that Southern Star has placed on the Subject Property.

7

Accordingly, Defendant's Rule 59(e) motion is granted.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's Rule 59(e) motion (Doc. 62) is denied and Defendant's Rule 59(e) motion (Doc. 64) is granted.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

The case is closed.

Dated at Kansas City, Kansas, this 18th day of May 2005.

/s/ G.T. VanBebber
G. Thomas VanBebber
United States Senior District Judge

8